UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:17-cv-00876

| | |
|---|---|
| SUMMERS LABORATORIES, INC., | |
| Plaintiff, | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE** |
| v. | |
| ZYLERA PHARMACEUTICALS, LLC; LACHLAN PHARMACEUTICALS, LLC; and CONCORDIA PHARMACEUTICALS, INC. S.á.R.L. | |
| Defendants. | |

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................. 1

II. STATEMENT OF THE FACTS .......................................................................... 3

    A.  The Scope of the Court's Injunction ............................................................ 3

    B.  Shionogi Amends Its Answering Statement and Applies for Joinder in Arbitration. ..................................................................................................... 5

III. STATEMENT OF QUESTION(S) PRESENTED.................................................. 7

IV. ARGUMENT ....................................................................................................... 8

    A.  Standard of Review ...................................................................................... 9

    B.  Defendants Faithfully Obeyed the Letter and Spirit of this Court's Order... 9

        1.  The Court's Order did not bar joinder, but only prevented Defendants from asserting claims directly against Summers ...................... 9

        2.  Defendants have fully complied with the Court's Order; they have not and will not pursue direct claims against Summers in the Arbitration, and have not and will not interfere with the Arbitration ............................. 12

        3.  The scope of the Court's Order Does Not Include Shionogi ........... 17

    C.  Summers Fails to Present Clear and Convincing Evidence of Harm.......... 19

    D.  Defendants Are Not In Contempt................................................................. 21

V.  CONCLUSION ................................................................................................... 22

Case 1:17-cv-00876-CCE-JEP    Document 77    Filed 02/02/18    Page 2 of 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. TorPharm, Inc.,*
   503 F.3d 1372 (Fed. Cir. 2007)...........................................................................................21

*Ashcraft v. Conoco, Inc.,*
   218 F.3d 288 (4th Cir. 2000) .................................................................................................9

*Columbus-Am. Discovery Group, Inc. v. Unidentified, Wrecked and Abandoned
   Sailing Vessel,*
   34 F. Supp. 3d 595 (E.D. Va. 2014) ....................................................................................19

*Doe v. Herman,*
   Case No. 97-cv-0043, 1998 WL 35113312 (W.D. Va. May 6, 1998)....................................21

*Fed. Nat'l Mortg. Ass'n v. Bell,*
   576 Fed.Appx. 196 (4th Cir 2014)........................................................................................21

*In re General Motors Corp.,*
   61 F.3d 256 (4th Cir. 1995) ..............................................................................................9, 21

*Hunter Douglas Inc. v. Sheet Metal Workers Int'l Assoc., Local 159,*
   553 F. Supp. 324 (M.D.N.C. 1982) ......................................................................................16

*Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n,*
   389 U.S. 64 (1967)...............................................................................................................21

*N.C. State Conf. NAACP v. McCrory,*
   214 F. Supp. 3d 466 (M.D.N.C. 2016) ...................................................................................9

*NLRB v. Denver Bldg. & Constr. Trades Council,*
   341 U.S. 675 (1951)..............................................................................................................16

*Ransburg Electro-Coating Corp. v. Ionic Electrostatic Corp.,*
   395 F.2d 92 (4th Cir. 1968) ...................................................................................................9

*Ri Ra Holdings LLC. v. Ri Ra, Madra Mor, Inc.,*
   Case No. 1:99-cv-0374, 2002 WL 1009730 (M.D.N.C. May 16, 2002) ...................................9

*Superior Performers, Inc. v. Meaike,*
   Case No. 1:13-cv-1149, 2014 WL 3734758 (M.D.N.C. July 29, 2014)...................................21

*Univ. of Tex. v. Camenisch,*
   451 U.S. 390 (1981)..............................................................................................................16

Case 1:17-cv-00876-CCE-JEP   Document 77   Filed 02/02/18   Page 3 of 30

**Rules and Statutes**

Fed.R.Civ.P. 65(d)(2)(B) ..............................................................................................................18

Case 1:17-cv-00876-CCE-JEP    Document 77    Filed 02/02/18    Page 4 of 30

Defendants Concordia Pharmaceuticals, Inc. S.á.R.L. ("Concordia"), Lachlan Pharmaceuticals, LLC ("Lachlan"), and Zylera Pharmaceuticals, LLC ("Zylera") (together, "Defendants") respectfully oppose Plaintiff Summers Laboratories, Inc.'s ("Summers") Motion for Order to Show Cause (Doc. No. 66) ("Motion").

## I.    INTRODUCTION

On December 20, 2017, this Court issued an amended written order, enjoining Defendants from "interfering in or directly bringing claims against Summers" in the Arbitration between Summers and Shionogi Inc. ("Shionogi"). Doc. 49 (Dec. 20, 2017) at 1 ("Order"). As the Order itself stated, however, this summary of relief was informed by the Court's oral statements at the December 15, 2017 hearing. *Id*. at 1 (the Order is "based on the facts more specifically found and conclusions more specifically stated in open court at a hearing on December 15, 201[7]"). In the facts and conclusions stated on the record, the Court clarified the scope of the injunction, specifically explaining it ***does not*** preclude Shionogi from seeking to join Defendants in the Arbitration, so long as they do not pursue claims against Summers, nor does it preclude Defendants from participating in this Arbitration, for example, as witnesses. Whether the Defendants could be joined in this manner was up to the Arbitration Panel:

> THE COURT: So I don't know what the [AAA] rules say about joinder and I would not -- ***anything lawfully allowed by the AAA rules is not going to violate this injunction.*** If you-all have some specific question, I mean, you can come ask, but ***I don't know of any reason that the Defendants and Shionogi could not do what Mr. Perloff is proposing***. There may be a reason they can't do it, but I'm not ruling that they cannot do that today.

> MR. DOERR (counsel for Summers): We're comfortable with that as long as you're not ruling that they can.

> THE COURT: I am not ruling that they can or cannot, but I'm not enjoining -- I guess what they have done already is attempted to bring claims directly against Summers in the arbitration proceeding. ***I am prohibiting them from doing that, from directly bringing them against Summers in the arbitration proceeding***.

*Id*. Dec. 15, 2017 Hr'g Tr. at 81:3-17 (emphasis added) (attached as Exhibit 1 to the Declaration of Katharyn Grant (the "Grant Decl.")); *see also id*. 82:3-10 (counsel for Defendants: "just to be very plain, ***Shionogi would assert its claims, either joinder*** or its claims against the downstream parties. That issue would be joined and then Shionogi would seek a joinder of the two, but those three downstream parties could not then assert a direct claim against Summers because of your ruling . . . . THE COURT: Yes.") (emphasis added).

Defendants obeyed the letter and spirit of this Court's Order. In light of the Court's Order, Shionogi amended its Answering Statement and Counterclaims, providing that the counterclaims are brought solely by Shionogi. *See* Doc. 66-2 ("Am. Answering Statement") (Jan. 16, 2018) (reflecting only Shionogi in the caption, and asserting counterclaims on behalf of Shionogi alone). As directed by the Panel following a telephonic conference, Shionogi submitted its Application for Joinder, Doc. 66-1 ("Shionogi's Application"). In its submission, Shionogi explained that Concordia, Lachlan, and Zylera are "Interested Parties," and asked the Panel that they be joined in this capacity. Shionogi's Application was express that none of the Defendants would assert any claims against Summers, *see* Shionogi's Application at 6 ("Respondent

- 2 -

amended the Counterclaims in this Arbitration so they are brought solely by Shionogi."), and that their participation would not expand the scope of the Arbitration. *Id.* at 24 ("The issues currently before the Panel—whether a 'market change' as defined in the APA has occurred, and if so, whether Shionogi is entitled to a return of the overage already paid to Summers—will not be expanded by joinder.") Throughout its Application for Joinder, Shionogi demonstrated its purpose in joining Defendants as "Interested Parties," who would not pursue claims against Summers, was to "enhance efficiencies and avoid the dangers of contradictory rulings that could arise from separate proceedings," in a manner that would protect Shionogi and not prejudice Summers. *Id.* at 2.

Shionogi amended its Answering Statement so that it is the sole counterclaimant, and sought to join the Defendants as only as "Interested Parties"—that is, parties agreeing to be bound by the Arbitration's result, and who could be present during the hearing and see the evidence, but who would not assert direct claims against Summers. Because Defendants have done nothing not allowed by the Court's Order, Summers' Motion is ill-founded. It should be denied.

## II.     STATEMENT OF THE FACTS

In light of the Court's extensive knowledge of the facts underlying this matter, Defendants begin their Statement of the Facts with the Court's entry of an injunction and developments in the Arbitration since then.

### A.     The Scope of the Court's Injunction

The Court issued its written order on December 19, 2017, Doc. 48, and due to a

clerical error issued the amended Order on December 20, 2017. Doc. 49. Finding that the elements of a preliminary injunction had been satisfied, and "based on the facts more specifically found and conclusions more specifically stated in open court at a hearing on December 15, 201[7]," the Court enjoined Defendants "from interfering in or directly bringing claims against Summers Laboratories, Inc. in arbitration proceedings between Summers Laboratories, Inc., and Shionogi, Inc." Order at 1-2.

During the December 15 hearing, the Court initially stated its understanding that "the Plaintiffs want the Defendants to be enjoined and prohibited from interfering in or participating in the arbitration between Summers and Shionogi; is that right?" Dec. 15, 2017 Hr'g Tr. at 78:8-10. Counsel for Defendants requested a clarification of the scope of the Order, *id.* 78:16-21, leading to an extended discussion between the Court and parties. *See generally id.* 78:22-82:20.

During this discussion, the Court recognized the need for a "more precise" statement of the scope of the injunction. *Id.* 80:1-4 ("THE COURT: Okay. I can appreciate you would like this to be more precise and that's probably a good idea, so let me say prohibited from interfering in or directly bringing claims against."). The Court explained that Defendants would be enjoined "from directly bringing [claims] against Summers in the arbitration proceeding," but also held that the Court was "not ruling that they can or cannot" be otherwise joined in the Arbitration. *Id.* 81:12-17. Thus, "anything lawfully allowed by the AAA rules is not going to violate this injunction." *Id.* 81:4-5.

- 4 -

**B.      Shionogi Amends Its Answering Statement and Applies for Joinder in Arbitration.**

Shortly after the Court issued its amended Order, but before the transcript of the December 15 hearing was available, Summers' counsel in the Arbitration submitted the Order to the Arbitration Panel in AAA Case No. 01-17-0004-4710 (the "Arbitration"). *See* Email from B. Kelly to AAA (Dec. 21, 2017) (Grant Decl. Ex. 2).  Counsel for Shionogi responded with an accurate description of the December 15, 2017 proceedings. *See* Email from S. Perloff to AAA (Dec. 21, 2017) (Grant Decl. Ex. 3).  After the AAA Panel requested Shionogi to "supplement its email of December 21, 2017," Email from E. Sussman to Parties (Dec. 28, 2017) (Grant Decl. Ex. 4), Shionogi provided it the transcript of the December 15 hearing, along with a summary of the Court's analysis. Email from S. Perloff to AAA (Jan. 2, 2018) (Grant Decl. Ex. 5).

Summers and Shionogi participated in a telephonic conference with the Arbitration Panel on January 5, 2018.  The potential joinder of Concordia, Lachlan, and Zylera was a key item on the Panel's agenda; the Panel and Parties discussed the subject at length.  As a result of the discussions, the Panel set a submission date for Shionogi's joinder application for Friday, January 12, 2018, which was later continued to January 16, 2018.  During a meet-and-confer requested by the Panel, counsel for Shionogi offered a compromise to Summers' counsel as an alternative to formal joinder:  Concordia, Lachlan, and Zylera would be allowed to observe the Arbitration proceedings and review materials exchanged by the parties, but would not be formally joined.  Shionogi's Application at 3.  Summers declined, and on January 16, 2018, Shionogi submitted its

- 5 -

Application for Joinder and Amended Answering Statement.

Shionogi's Amended Answering Statement asserts counterclaims against Summers solely on its own behalf; Defendants are not joined as counterclaimants, and no relief is requested for them as against Summers. Doc. 66-2. Similarly, Shionogi's Application is brought solely by Shionogi, with the consent of the Defendants. Doc. 66-1. Shionogi's Application declares that no joined entity will assert claims against Summers in the Arbitration. *Id.* at 7 ("none of the Interested Parties will seek to assert claims directly against Summers in this Arbitration"). In the alternative, Shionogi restated its offer of compromise, and asked the Panel to allow Defendants—even if not formally joined—to each have a representative observe the Arbitration hearing and be allowed to review the materials exchanged by the Parties. *Id.* at 26-27.

Summers filed its "Request for Hearing to Enforce Injunction," Doc. 56 (Jan. 18, 2018), at about the same time it asked the Arbitration Panel for more time to respond to Shionogi's Application. Email from B. Kelly to AAA (Jan. 18, 2018) (Grant Decl. Ex. 6). The Panel granted Summers' request, giving it until February 7, 2018 to respond to Shionogi's Application. Email from E. Sussman to Parties (Jan. 21, 2018) (Grant Decl. Ex. 7). This Court denied Summers' Request, observing: "a 'request for hearing' is not an appropriate mechanism to seek court action beyond holding a hearing." Doc. 64.

Summers' assertion that its "counsel contacted counsel for Defendants on January 18, 2018, and requested withdrawal of the arbitration filings in an effort to avoid the need for additional proceedings in this Court," and that "Defendants' counsel still has not

- 6 -

responded," Motion ¶ 5, is incomplete.  Once the Court denied the Request for Hearing, that issue became moot, and Summers' counsel made no attempt to meet and confer regarding the instant Motion.  Beyond this, Shionogi's counsel spoke with Summers' arbitration counsel on January 10, 2018, to discuss the Defendants' participation as an alternative to joinder.  That day or the next, Defendants' counsel also spoke with Summers' litigation counsel to discuss Summers' proposed request for a stay of proceedings in this Court.  Although Summers was well aware that Shionogi planned to apply for joinder as discussed at the January 5 conference and in the January 10 meet-and-confer, Summers' counsel made no attempt to meet and confer about the scope of the Court's Order or any alleged noncompliance by Defendants.  Summers' counsel also was told that Defendants' counsel would be out of the office and traveling on January 18.

After Summers filed its Motion in this Court on January 22, 2018, Doc. 66, it asked the Panel to stay its consideration of joinder pending the Motion's resolution. Email from J. Huh to Panel (Jan. 23, 2018) (Grant Decl. Ex. 8).  The Panel denied Summers' request.  *See* Email from E. Sussman to Parties (Jan. 24, 2018) (Grant Decl. Ex. 9) ("The Panel has conferred.  Claimant's application for a stay of Shionogi's Application for Joinder pending the district court's ruling is denied.  The schedule remains as set forth in Order No. 1.").  Summers' opposition to Shionogi's Application remains pending.

## III.  STATEMENT OF QUESTION(S) PRESENTED

(1)    Have Defendants complied with this Court's Order by not pursuing claims

- 7 -

directly against Summers or otherwise interfering in the Arbitration?

(2)    Did Shionogi violate this Court's Order by requesting the Arbitration Panel to join Defendants as interested parties?

## IV.    ARGUMENT

This is a Motion that should never have been brought. The Court's direction at the December 15 hearing was clear: Concordia, Lachlan, and Zylera could not interfere with the Arbitration or pursue claims directly against Summers in the Arbitration. Complying with the Court's Order, Shionogi amended its Answering Statement, removed the Defendants as Counterclaimants, and asserted the counterclaims solely on its own behalf..

At the same time, the Court repeatedly and expressly stated that whether Shionogi could ask the Arbitration Panel to join Concordia, Lachlan, and Zylera in the Arbitration in some role not involving direct claims against Summers was not an issue before the Court. The Court specifically stated that it was not enjoining Shionogi from seeking such joinder from the Arbitration Panel, and whether or not the Panel could join the Defendants as non-claimants would be decided under the AAA Rules—and not by the Court's Order. Shionogi's subsequent Application for such joinder does not violate the Court's injunction—to the contrary, it is specifically allowed by it.

Summers now argues that doing what the Court explicitly refused to enjoin amounts to "interfering in" the arbitration proceedings and therefore was enjoined after all. Summers is incorrect, and its Motion should be denied.

## A.    Standard of Review

"The burden is on the complainant to prove civil contempt by clear and convincing evidence." *In re General Motors Corp.,* 61 F.3d 256, 258 (4th Cir. 1995); *see also Ri Ra Holdings LLC. v. Ri Ra, Madra Mor, Inc.*, Case No. 1:99-cv-0374, 2002 WL 1009730, at *6 (M.D.N.C. May 16, 2002).  A party seeking contempt must show:

(1)     the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;

(2)     that the decree was in the movant's favor;

(3)     that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive) of such violations; and

(4)     that the movant suffered harm as a result.

*Ashcraft v. Conoco, Inc*., 218 F.3d 288, 301 (4th Cir. 2000) (citations omitted) (reversing finding of civil contempt).  Meeting these elements by clear and convincing evidence represents "a high bar," *N.C. State Conf. NAACP v. McCrory*, 214 F. Supp. 3d 466, 478 (M.D.N.C. 2016), and a "heavy burden."  *Ransburg Electro-Coating Corp. v. Ionic Electrostatic Corp.,* 395 F.2d 92, 97 (4th Cir. 1968).

## B.    Defendants Faithfully Obeyed the Letter and Spirit of this Court's Order.

There can be no contempt where there has been no violation of the injunction. *Ransburg Electro-Coating Corp*., 395 F.2d at 97.  And here, there has been no violation.

### 1.    The Court's Order did not bar joinder, but only prevented Defendants from asserting claims directly against Summers

Summers bases its Motion on a fundamental misstatement:  that this Court's Order

- 9 -

barred any attempt to join Defendants, in any capacity, in the Arbitration. *E.g.*, Br. in

Supp't of Motion [Doc. 67] at 5 (asserting that "Defendants' continuing efforts to join the

pending arbitration, obtain declarations regarding their contracts with each other, and

otherwise participate adverse to Summers in the bilateral arbitration between Summers

and Shionogi directly violate this Court's injunction."); *id.* at 8 ("Defendants attempt to

obtain 'joinder' in the arbitration constitutes a violation of the PI order"). The Court's

Order does ***not*** bar joinder: "I am not ruling that they can or cannot[.]" Dec. 15, 2017

Hr'g Tr. at 81:12 (Ex. 1). Rather, the Court barred Defendants from pursuing claims in

the Arbitration directly against Summers:

> I'm not enjoining -- I guess what they have done already is attempted to
> bring claims directly against Summers in the arbitration proceeding. I am
> prohibiting them from doing that, from directly bringing them against
> Summers in the arbitration proceeding.

*Id.* 81:13-17.

The scope of the injunction is expressly limited. The Court originally proposed an

injunction barring Defendants from "participating" in the Arbitration. *Id.* 78:9. As the

Court recognized, this construction was too broad:

> MR. PERLOFF: Okay. And as far as participation, certainly the
>     downstream parties can be witnesses if they're called as witnesses?
>
> THE COURT: Well, yeah. I mean -- yes.

*Id.* 79:16-19.

The Court specifically crafted a "more precise" statement of the scope of its

injunction. *Id.* 80:1-4 ("let me say prohibited from interfering in or directly bringing

- 10 -

claims against").  In response to the Court's query whether this was "really what you're complaining about, isn't it, for Summers," *id.* 80:5-6, counsel for Summers sought to expand the scope of the injunction to bar any joinder of Defendants in the Arbitration.  *Id.* 80:12-21 (seeking to bar Defendants from "filing a separate arbitration just involving the Defendants and then seeking to consolidate them").  The Court **rejected** Summers proposal, observing that Summers "agreed to the AAA rules."  *Id.* 80:24.  This Court expressly deferred to those AAA rules with respect to joinder, explaining that

> ***anything lawfully allowed by the AAA rules is not going to violate this injunction.***  If you-all have some specific question, I mean, you can come ask, but ***I don't know of any reason that the Defendants and Shionogi could not do what Mr. Perloff is proposing***.  There may be a reason they can't do it, but I'm not ruling that they cannot do that today.

*Id*. at 81:4-9 (emphasis added).

Summers grudgingly acknowledges that Defendants' counsel asked the Court regarding Shionogi's joinder of the Defendants in the Arbitration, but characterizes this discussion as a mere "hypothetical question."  Br. in Supp't of Motion at 9.  But the issue before the Court was not hypothetical; the Court knew that Summers and Shionogi were in Arbitration over the question of whether a "Market Change" had occurred.  The Court knew that each Defendant was linked through a chain of contracts to Shionogi, that each of those contracts had a similar Market Change provision, and that each Defendant would be impacted by the Arbitration's result.  The Court was aware that Shionogi wanted the Defendants joined in the Arbitration to avoid parallel litigation and inconsistent judgments, that Defendants wanted this as well, and that Defendants' counsel was asking

- 11 -

questions specifically to ensure that the actions taken in the Arbitration would not violate the Court's Order.

Summers argues that Shionogi's Application was somehow the improper procedural mechanism to employ in the Arbitration because it did "not involve an attempt to initiate separate arbitrations," Br. in Supp't of Motion at 9. But Defendants' counsel specifically broached with this Court the precise procedural mechanism later used by Shionogi. This Court agreed this approach would not violate the injunction, and Summers' counsel acquiesced in the Court's decision:

> MR. PERLOFF: No, I think that what we're talking about, just to be very plain, Shionogi would assert its claims, *either joinder* or its claims against the downstream parties. That issue would be joined and then Shionogi would seek a joinder of the two, *but those three downstream parties could not then assert a direct claim against Summers because of your ruling*. We acknowledge that.

> THE COURT: Yes.

> MS. HOUCK: *That's what's important to us. We can deal with the joinder issue later.*

Tr. of Hr'g (Dec. 15, 2017) 82:3-12 (emphasis added). Shionogi's Application does exactly what this Court allowed it to do—put the issue of joinder of the Defendants, strictly as non-complainants, to the Arbitration Panel. There has been no violation of the Court's Order.

> **2. Defendants have fully complied with the Court's Order; they have not and will not pursue direct claims against Summers in the Arbitration, and have not and will not interfere with the Arbitration**

Summers' stated concern during the December 15 hearing regarding the scope of

- 12 -

this Court's Order was that Defendants could somehow pursue direct claims against Summers:

> MS. HOUCK: And, Your Honor, are you prohibiting them from doing that even if they are, through some procedure that they've come up with, joined and then try to bring the claims against us? I think that would put us right back here in the exact same position, where they're trying to bring direct arbitration claims against Summers.
>
> THE COURT: Well, I don't see how they could do that under –
>
> MS. HOUCK: As long as that's not what's being allowed.

Tr. of Hr'g (Dec. 15, 2017) 81:18-82:2. To allay these concerns, Defendants' counsel proposed that "They"—Defendants, Shionogi, and Summers—"may all be in the room together. They may all be arguing about the same issues, but there will not be a direct claim by the downstream parties." *Id.* 82:13-15. This Court agreed with Defendants' proposal, and ordered: "Okay. So the injunction will say the Defendants are enjoined and prohibited from interfering in or directly bringing claims against [Summers] in the arbitration between Summers and Shionogi. All right." *Id.* 82:16-19.

In its Motion, Summers incorrectly states that "Defendants are seeking to join in Shionogi's position (and resulting counterclaims) in the arbitration," Motion ¶4, *see also* Br. in Supp't of Motion at 5. In fact, the Arbitration counterclaims have been amended, and are brought solely on behalf of Shionogi, *see* Am. Answering Statement § III ("Counterclaims") ("For its Counterclaims against Summers, Shionogi would respectfully show the Panel as follows"). All relief sought as against Summers is solely on behalf of Shionogi. *See id.* ¶ 32 (First Counterclaim for Declaratory Judgment)

- 13 -

("Shionogi seeks a declaratory judgment that a Market Change has occurred, and that Shionogi is not obligated to pay Minimum Payments pursuant to the APA in calendar year 2017, or in any subsequent year; and that the only payments due Summers in 2017 and in any subsequent year are Annual Sales Payments, calculated as a percentage of annual net sales as specified in the APA."); *id.* ¶ 37 (Second Counterclaim for Unjust Enrichment) ("Equity and good conscience require that Summers should make restitution of the overpayment to Shionogi in the amount of $2,741,163"); *id.* ¶ 41 (Third Counterclaim for Conversion) ("Summers actions directly interfere with Shionogi's possessory rights"); *see also id.*, "Conclusion & Prayer" ("Shionogi respectfully requests" enumerated relief, including a declaratory judgment, damages, and attorney's fees). Shionogi even removed Concordia, Lachlan, and Zylera from the caption of its Arbitration pleading:

**The Arbitration Tribunals of the
American Arbitration Association**

| | |
|---|---|
| In the Matter of the Arbitration between ) | Case No. 01-17-0004-4710 |
| ) | |
| SUMMERS LABORATORIES, INC. ) | Case Manager: Mansi Karol, Esq. |
| *Claimant/Counter-Respondent,* ) | |
| ) | |
| and ) | |
| ) | |
| SHIONOGI INC. ) | |
| *Respondent/Counter-Claimant* ) | |

**RESPONDENT/COUNTER-CLAIMANT SHIONOGI INC.'S AMENDED
ANSWERING STATEMENT TO SUMMERS LABORATORIES, INC.'S
DEMAND FOR ARBITRATION AND COUNTER-CLAIMS**

In short, Defendants have fully complied with this Court's Order.

Shionogi's Application also is brought only by Shionogi, with Defendants'

- 14 -

consent as "Interested Parties." *See* Doc. 66-1 at 1 ("Respondent/Counter-Claimant Shionogi Inc. ('Shionogi'), with the consent of the Interested Parties [Concordia, Lachlan, and Zylera] respectfully requests Joinder of the Interested Parties.").

Summers nevertheless takes issue with Shionogi's submissions, complaining that the reference in the Amended Answering Statement to "the other Product Agreements" means that "Defendants are expressly attempting to obtain relief in the arbitration . . . ." Br. in Supp't of Motion at 6-7 & 8. But Summers fails to point to any claim by the Defendants *against Summers*. There is no such adverse claim; Concordia, Lachlan, and Zylera assert no claims against Summers, and ask for no relief from Summers. Rather, the only effort is to avoid inconsistent judgments between themselves and Shionogi, as the Amended Answering Statement expressly states:

> As set forth herein and in Shionogi's Application for Joinder, filed concurrently herewith, Shionogi, Concordia, Lachlan, and Zylera enjoy mutual rights and obligations, as applicable, relating to the marketing, distribution and sale of Ulesfia. Shionogi, Concordia, Lachlan, and Zylera share a common interest in resolving any dispute with Summers as to whether a Market Change has occurred and what Ulesfia product payments are due under the Product Agreements. Shionogi, Concordia, Lachlan, and Zylera agree to rely on this Panel's adjudication of common questions in this proceeding, including whether a Market Change as commonly defined in the APA and the other Product Agreements has occurred, and/or what Ulesfia products payments are and/or have been properly due to Summers, and/or the disposition of past overpayments between Shionogi and Summers, in order to avoid the risk of any party incurring inconsistent obligations due to separate proceedings resulting in contradictory judgments.

Doc. 66-2 ¶29. This statement cannot be characterized as the assertion by Defendants of a claim that Summers has an obligation to them directly or owes them any relief.

- 15 -

Finally, Summers challenges Shionogi's Application as an "attempt to relitigate issues they [sic] have already lost," Br. in Supp't of Motion at 11. While it is ironic that *Summers* would complain about a danger of inconsistent decisions arising from parallel litigation and arbitration, both of which it initiated, *see* Summers' Reply in Supp't of Mot. for Prel. Inj. [Doc. 39] (Dec. 4, 2017) at 13-14 (arguing that "piecemeal resolution" and inconsistent judgments are necessary risks under federal arbitration law), its argument is simply wrong. Shionogi was not before the Court, and thus Shionogi could not "relitigate" anything. Moreover, the Court held that "[t]he injunction certainly would not prohibit" Shionogi from seeking joinder. Tr. of Hr'g (Dec. 15, 2017) 79:4-5. Instead, at issue before this Court was whether Defendants could directly pursue counterclaims against Summers in the Arbitration. The Court held they could not, and Defendants no longer pursue direct claims against Summers. Shionogi is not seeking to arbitrate that issue before the Panel; instead, it treats it as resolved.[1]

The arguments raised in Shionogi's Application are addressed strictly to the Arbitration Panel's discretion to order procedural joinder. *E.g.*, Shionogi's Application at 2 ("as a procedural question, the joinder of the Interested Parties lies within the Panel's exclusive discretion"). The question of whether "the arbitration panel has the power to

---

[1] Procedurally, "findings of fact and conclusions of law reached as a result of preliminary injunction hearings are not *res judicata* on the merits of the underlying claim," even with regard to the parties involved. *Hunter Douglas Inc. v. Sheet Metal Workers Int'l Assoc., Local 159*, 553 F. Supp. 324, 327 (M.D.N.C. 1982) (Citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981); *NLRB v. Denver Bldg. & Constr. Trades Council*, 341 U.S. 675 (1951)). Despite the interlocutory nature of the Order, however, Defendants and Shionogi have regarded it as effectively final, and will continue to do so.

- 16 -

decide whether [Defendants] can participate in the arbitration," Br. in Supp't of Motion at 11, was not decided by this Court. As sought by Shionogi, and as allowed by this Court, this issue should be decided by the Arbitration Panel. Tr. of Hr'g (Dec. 15, 2017) 81:4-5 ("anything lawfully allowed by the AAA rules is not going to violate this injunction").

### 3. The scope of the Court's Order Does Not Include Shionogi

Summers bases its Motion on Shionogi's submission of its Amended Answering Statement and Application to the Arbitration Panel, and the relief it seeks goes directly to requiring Shionogi to withdraw its Arbitration submissions. Motion at 4 (demanding that Shionogi withdraw its Application from the Panel's consideration). Neither of these submissions were offered by Defendants, but rather were offered solely by Shionogi and only Shionogi. Defendants did no more than agree to be joined if the Panel granted the relief sought by Shionogi. But while Shionogi has not taken and will not take any steps that would violate or lead to a violation of this Court's Order, the Court expressly and repeatedly stated that the injunction did not preclude *Shionogi* from taking actions in the Arbitration:

> MR. PERLOFF: I want to be clear. You had just mentioned the other options that -- that these parties, the Defendants here, have; and if Shionogi brings a claim against the three parties and the parties agree to arbitrate it and Shionogi seeks consolidation, provided those parties don't assert claims against --
>
> THE COURT: I'm not -- *Shionogi is not before me*.
>
> MR. PERLOFF: Okay. I just --
>
> THE COURT: So Shionogi -- *I am not enjoining Shionogi from doing anything*, including what -- I mean, I'm not – I don't know whether

that would be successful or not, but I have no idea. As far as I know, there's no reason they can't ask for that, but I -- as far as I know, it doesn't go very far, but -- as far as I know. The injunction certainly would not prohibit that.

MR. PERLOFF: I just wanted to make sure it would not prohibit them from --

THE COURT: Shionogi.

MR. PERLOFF: From Shionogi bringing a claim in arbitration that the three downstream parties agree to and seeking consolidation of those two.

THE COURT: Right, I am not -- ***I do not anticipate enjoining Shionogi from anything*** so --

MR. PERLOFF: Okay. So --

THE COURT: Yes.

Tr. of Hr'g (Dec. 15, 2017) at 78:16-79:15.

Despite the clarity of this Court's explanation that it was not "enjoining Shionogi from anything," Summers argues in a footnote that Shionogi is implicitly bound by this Court's ruling because it shares counsel with Defendants. *See* Br. in Supp't of Motion at 10, n.4 (quoting Fed.R.Civ.P. 65(d)(2)(B)). But the point here is that the Order by its terms does not require Shionogi to refrain from doing anything, a point about which the Court was explicit. "I am not enjoining Shionogi from doing anything" has only one possible meaning, and Summers' attempt to circumvent an express limitation in the scope of the Order is untenable. Because only Shionogi submitted its Amended Answering Statement and Application for Joinder to the Arbitration Panel, there could be no possible violation of the Court's Order.

- 18 -

### C.    Summers Fails to Present Clear and Convincing Evidence of Harm

"[I]n order to establish civil contempt, a movant must show by clear and convincing evidence that it suffered harm as a result of the offensive conduct, among other elements."  *Columbus-Am. Discovery Group, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel*, 34 F. Supp. 3d 595 (E.D. Va. 2014).  Summers offers *ipse dixit* argument rather than clear and convincing evidence to support this necessary element.  *See* Br. in Supp't of Motion at 12.  In particular, Summers relies on "[t]he fact that Summers has been forced to bring this motion" and "the costs of bringing this motion" to prove "harm."  *Id.*  But if the mere submission of a motion for contempt were itself sufficient "harm" to justify the submission of the motion, the "harm" element would be superfluous as it would *always* be satisfied.  Not surprisingly, Summers offers no authority that circular logic constitutes clear and convincing evidence.

Beyond failing to present any evidence of harm, Summers fails to provide any legitimate reason for bringing its Motion at this time.  Rather, it appears that Summers simply wishes to use the uncertainty of a pending motion in this Court to influence the Arbitration Panel.  But this Court has already made clear that the Panel is going to have to decide whether and to what extent Shionogi is allowed to have the Defendants participate in the Arbitration under the governing AAA Rules.  It is profoundly unlikely that they will be excluded entirely; at least some documentary and testimonial evidence from one or more of the Defendants will almost certainly be critical evidence in the Arbitration.  *Cf.*, Tr. of Hr'g (Dec. 15, 2017) 79:16-19.  Shionogi believes, and has urged

the Panel to agree, that at a bare minimum Concordia, Lachlan, and Zylera should be allowed to be present at the Arbitration hearing and review exhibits submitted therein. Not only do they each have a strong interest in the outcome of the proceedings, but their insights may prove invaluable. Shionogi's Application at 26-27. The Court's Order clearly did not enjoin such participation; to the contrary, the Court explicitly noted that anything allowed by the AAA rules will not violate the Order. Tr. of H'rg (Dec. 15, 2017) 81:4-5.

Summers presumably intends to oppose Shionogi's Application to join Concordia, Lachlan, and Zylera as "Interested Parties," although to date it has articulated no good faith basis for this opposition. As set forth at length above, Shionogi's Application for this relief is not a colorable violation of the Court's Order. Contrary to Summers' vague allusion, nothing in the Application will require Summers to "arbitrate a claim it did not consent to arbitrate . . . ." Br. in Supp't of Motion at 12. Rather, Shionogi's three counterclaims, sounding in declaratory judgment, unjust enrichment, and conversion, will have to be arbitrated no matter the ruling on joinder. *See generally* Am. Answering Statement. The only question is whether the Defendants can protect their interests as joined "Interested Parties," who specifically will not be pursuing counterclaims against Summers. This Court, again, was express that its Order neither allowed nor disallowed such a joinder. Tr. of Hr'g (Dec. 15, 2017) 81:8-9 ("There may be a reason they can't do it, but I'm not ruling that they cannot do that today."); 81:12 ("I am not ruling that they can or cannot"). Shionogi's Application does no more than ask the Panel for its

- 20 -

construction of the AAA Rules, and Summers can claim no "harm" in participating in an Arbitration it brought in the first instance.

### D. Defendants Are Not In Contempt

"Civil contempt is an appropriate sanction only if the court has issued an order 'which sets forth in specific detail an unequivocal command which a party has violated.'" *Fed. Nat'l Mortg. Ass'n v. Bell*, 576 Fed.Appx. 196, 197 (4th Cir 2014); *see also In re General Motors Corp.,* 61 F.3d at 258. This is because "[t]he judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one." *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). "These concerns have led courts to construe injunctions narrowly where, as here, they failed to give adequate notice that particular conduct was enjoined." *Abbott Labs. v. TorPharm, Inc.,* 503 F.3d 1372, 1382-83 (Fed. Cir. 2007).

The record demonstrates that Defendants have not violated any "unequivocal command," but to the contrary have made "a good-faith attempt to comply with the court's order," resulting in at least "substantial compliance," and indeed complete adherence to the Court's Order. *Superior Performers, Inc. v. Meaike,* Case No. 1:13-cv-1149, 2014 WL 3734758, at *3 (M.D.N.C. July 29, 2014) (describing defenses to contempt motion); *see also Doe v. Herman*, Case No. 97-cv-0043, 1998 WL 35113312, at *5 (W.D. Va. May 6, 1998) (evidence of efforts made to comply with injunction overcame plaintiff's *prima facie* case for civil contempt). Defendants are no longer pursuing direct claims against Summers in the Arbitration, and instead Shionogi amended

its Answering Statement to make clear that the Arbitration Counterclaims are brought solely by Shionogi. There is no evidence—and certainly no "clear and convincing" evidence—that Defendants have otherwise interfered in the Arbitration.

Summers fails to meet its "heavy burden" of demonstrating contempt. Its Motion for an Order to Show Cause should be denied.

## V.    CONCLUSION

The Court should DENY Summers' Motion for an Order to Show Cause.

Dated: February 2, 2018

/s/Saul Perloff
Saul H. Perloff (Texas Bar No. 00795128)
Norton Rose Fulbright US LLP
300 Convent Street, Suite 2100
San Antonio, Texas 78205
Telephone:    (210) 224-5575
Facsimile:    (210) 270-7205
Email:    saul.perloff@nortonrosefulbright.com


/s/Rodrick J. Enns
Rodrick J. Enns (N.C. Bar J. No. 12151)
Enns & Archer LLP
939 Burke Street
Winston-Salem-NC 27101
Telephone:    (336) 723-5180
Facsimile:    (336) 723-5181
Email: renns@ennsandarcher.com


*Counsel for Defendants*
*Concordia Pharmaceuticals, Inc. S.á.R.L.,*
*Lachlan Pharmaceuticals, LLC, and*
*Zylera Pharmaceuticals, LLC*

- 23 -

# CERTIFICATE OF SERVICE

This is to certify that on February 2, 2018, a copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send notification of filing to the following parties of record via electronic mail:

Pearlynn G. Houck
phouck@robinsonbradshaw.com

Adam K. Doerr
adoerr@robinsonbradshaw.com

Morgan P. Abbott
mabbott@robinsonbradshaw.com

*/s/Saul Perloff*
Saul H. Perloff (Texas Bar No. 00795128)
Norton Rose Fulbright US LLP
300 Convent Street, Suite 2100
San Antonio, Texas 78205
Telephone:   (210) 224-5575
Facsimile:    (210) 270-7205
Email: saul.perloff@nortonrosefulbright.com

*Counsel for Defendants*
*Concordia Pharmaceuticals, Inc. S.á.R.L.,*
*Lachlan Pharmaceuticals, LLC, and*
*Zylera Pharmaceuticals, LLC*

- 24 -

| | |
|---|---|
| Excerpts of Hearing Transcript (Dec. 15, 2017)<br>    Pages: 78-82 | 1 |
| Email from B. Kelly to AAA (Dec. 21, 2017) | 2 |
| Email from D. Thompson to AAA (Dec. 21, 2017) | 3 |
| Email from E. Sussman to Parties (Dec. 28, 2017) | 4 |
| Email from D. Thompson to AAA (Jan. 2, 2018) | 5 |
| Email from B. Kelly to AAA (Jan. 18, 2018). | 6 |
| Email from E. Sussman to Parties (Jan. 21, 2018) | 7 |
| Email from J. Huh to Panel (Jan. 23, 2018) | 8 |
| Email from E. Sussman to Parties (Jan. 24, 2018) | 9 |

## CERTIFICATE OF WORD COUNT

I, Saul Perloff, certify that **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE** complies with Local Rule 7.3(d)(1).

I further certify that, in preparation of this memorandum, I used Microsoft® Word 2010, and that this word processing program has been applied specifically to include the body of the brief, all headings, footnotes, and quotations and resulted in the following word count: 5,677.

This 2nd day of February, 2018.

/s/Saul Perloff
Saul Perloff